UNITED STATES DISTRICT COURT  Eastern District of Kentucky
EASTERN DISTRICT OF KENTUCKY          F I L E D
PIKEVILLE
NOV 3 0 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-157-GWU

MILO G. HEALEY,                                                PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                     DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI). The appeal is currently before the Court on cross-motions

for summary judgment.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.     Is the claimant currently engaged in substantial gainful activity?
       If yes, the claimant is not disabled. If no, proceed to Step 2.
       See 20 C.F.R. 404.1520(b), 416.920(b).

2.     Does the claimant have any medically determinable physical
       or mental impairment(s)? If yes, proceed to Step 3. If no, the
       claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.     Does the claimant have any severe impairment(s)--i.e., any
       impairment(s) significantly limiting the claimant's physical or
       mental ability to do basic work activities? If yes, proceed to

1

Healey

Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

Healey

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

Healey

> First, we examine whether there is objective medical evidence of an
> underlying medical condition. If there is, we then examine: (1)
> whether objective medical evidence confirms the severity of the alleged
> pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

1986).

Another issue concerns the effect of proof that an impairment may be

remedied by treatment. The Sixth Circuit has held that such an impairment will not

serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health

and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same

result does not follow if the record is devoid of any evidence that the plaintiff would

have regained his residual capacity for work if he had followed his doctor's

instructions to do something or if the instructions were merely recommendations.

Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,

1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before

it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.

1987). Further, a failure to seek treatment for a period of time may be a factor to be

considered against the plaintiff, Hale v. Secretary of Health and Human Services,

816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Healey

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Healey

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d

6

Healey

279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

### DISCUSSION

The plaintiff, Milo G. Healey, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of chronic low back pain, reduced visual acuity of the left eye, and bilateral hearing loss. (Tr. 22). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Healey retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 26-30). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were limited to lifting 50 pounds occasionally and 25 pounds frequently, and also had the following non-exertional impairments. (Tr. 302). He: (1) could never climb ladders, ropes, or scaffolds; (2) needed to avoid activities requiring fine depth perception and field of vision due to limited vision in his left eye; and (3) needed to avoid concentrated exposure to noise, or be provided with hearing protection due to a slight hearing loss. (Id.). The VE responded that there were jobs that such a person

7

could perform, and proceeded to give the numbers in which they existed in the regional and national economies. (Tr. 304).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Healey alleged disability as of July, 2003 due to back problems, nervousness, vision and hearing problems, and bad knees. (Tr. 75). He admitted that the closure of the factory where he worked coincided with his onset date, but testified that he was having steroid injections in his lower back prior to that time and was missing work, and had assistance from other employees to complete his job. (Tr. 284, 286, 291-2). He had a growth in his left eye which left him with blurry vision, but had not had an ophthalmological evaluation due to a lack of finances. (Tr. 283-4). He had poor hearing, and had been told he needed a hearing aid; he also had a problem with nervousness and being around crowds of people, although he denied memory problems. (Tr. 295-6).

The ALJ's hypothetical restrictions are consistent with the opinion of a state agency reviewing physician, Dr. J. E. Baez-Garcia, who reviewed the evidence as of April 4, 2004 and concluded that the plaintiff could perform medium level exertion, could never climb, had limited depth perception and field of vision in the left eye, and had limited hearing, but could hear normal conversations in a noise-free environment, and needed to avoid concentrated exposure to noise. (Tr. 241-5). Dr.

8

Healey

Baez-Garcia stated that he affirmed the opinion of an earlier state agency reviewer, Dr. Bastnagel, who had reviewed the evidence in January, 2004. (Tr. 173-80). However, Dr. Bastnagel had stated that the plaintiff needed to avoid all exposure to hazards (Tr. 177), apparently based on the plaintiff's visual and hearing limitations. Dr. Baez-Garcia did not give a reason for not accepting a limitation on hazards. Thus, there is an unexplained inconsistency in the opinions of the state agency reviewers, which was not addressed in the ALJ's hearing decision.

Nor did the state agency physicians comment on letters from Mr. Healey's treating family physician, Dr. Christine Hamilton. Dr. Hamilton had opined that the plaintiff was "disabled," was limited to less than sedentary level exertion, and was not able to stand, sit, or walk for prolonged periods of time due to chronic low back pain with lumbar radiculitis, degenerative disc disease, and lumbar spinal stenosis, as well as moderate to severe hearing loss in both ears. (Tr. 197-8). Dr. Bastnagel did indicate that there was a treating or examining source statement, but the conclusions were not significantly different from his findings. (Tr. 179). Thus, it appears that he may not have seen Dr. Hamilton's letters and, therefore, the record was not fully reviewed by the state agency sources.

The ALJ stated in his decision that he declined to accept the opinion of Dr. Hamilton, which was augmented after the state agency reviewers had completed their forms by an additional medical report and a specific residual functional capacity evaluation limiting the plaintiff to less than full-time work (Tr. 262-8), because it was

9

not based on sufficient medical evidence (Tr. 26). He also declined to accept a similar opinion from another examining source, Dr. Jason Rice, which was also completed after the state agency physicians had reviewed the record. (Tr. 26, 269-77).[1] However, office notes submitted by Dr. Hamilton indicate that she had not only treated the plaintiff and prescribed medication, but had access to treatment notes from other physicians who treated the plaintiff, including the physician who performed epidural steroid injections. (Tr. 196-234). Dr. Hamilton described Mr. Healey's problems as including several years of back pain which interfered with his functioning at work and at home, as a result of degenerative disc disease, lumbar spinal stenosis, and lumbar radiculitis. (Tr. 262). She described it as a "chronic, progressive problem," and noted only mild relief with oral pain medications and short-term benefit from steroids. (Tr. 265). Physical examinations were said to show low back pain which increased with range of motion testing, and radiated into the

---

[1]Dr. Rice evaluated the plaintiff in February, 2004 and prescribed medication for high blood pressure, osteoarthritis, and anxiety. (Tr. 236-7). There was an inconsistency in Dr. Rice's opinions (Tr. 269-77) regarding the plaintiff's mental restrictions, as noted by the ALJ (Tr. 27). However, many of the reasons given for rejecting all of his restrictions are questionable, since it is not evident from the transcript that Mr. Healey saw Dr. Rice "through attorney referral and in connection with an effort to generate evidence for the current appeal." (Id.). Assuming that it did happen, it would not make the evidence less trustworthy than the opinions the Commissioner generates from consultative examinations. Nor is the ALJ's assumption that Dr. Rice was paid for the report a reasonable ground to question his credibility, since all medical providers expect to be paid. Finally, the ALJ asserted that an opinion regarding mental restrictions was outside Dr. Rice's area of expertise. (Id.). However, Dr. Rice is an osteopath, an acceptable medical source under the regulations, and he prescribed an anti-depressant. (Tr. 237).

buttocks and hips. (Tr. 263). In terms of physical restrictions, she opined that Mr. Healey would be limited to less than full-time sitting and standing and to less than sedentary level lifting. (Tr. 266-7).

The ALJ rejected the treating physician's opinion, but much of the medical evidence cited, such as a January, 2002 evaluation by Dr. Robert Shugart, and a January, 2002 evaluation by Dr. Carl Stallman, predated the plaintiff's alleged onset date by over a year. (Tr. 26, 133, 216). Another source mentioned by the ALJ without comment was Michael Cox, D.C., a chiropractor, who saw Mr. Healey in May, 2003, shortly before the alleged onset date; while a chiropractor is not an acceptable medical source under 20 C.F.R. Section 404.1513(d), an ALJ may consider a chiropractor's evidence. To the extent that the ALJ did so, Dr. Cox obtained lumbar spine X-rays showing degenerative disc disease, disc compression and degeneration, lumbar facet syndrome and stenosis, and lumbar and pelvic subluxations. (Tr. 158). Therefore, the bulk of the evidence cited by the ALJ is either outside the relevant time period for the plaintiff's application, or does not clearly contradict the treating physician.

One report cited by the ALJ that <u>was</u> within the relevant period is a consultative internal medical examination by Dr. Phillip Budzenski on December 22, 2003. (Tr. 166). The physician did review some of Dr. Hamilton's records, noting that Mr. Healey had gained 27 pounds since May 22, 2003. (Id.). His physical examination showed that Mr. Healey was "comfortable" in both seated and supine

11

Healey

positions, and had no physical symptoms suggesting lumbar spinal stenosis or lumbar radiculitis. (Tr. 167-71). However, he had evidently taken his prescribed OxyContin just before the examination. (Tr. 171). Dr. Budzenski felt that the soft tissue mass in Mr. Healey's eye needed to be evaluated, and he certainly had decreased visual acuity. (Id.). In terms of functional restrictions, the consultative examiner felt that the plaintiff could perform "at least medium work," but with no activities requiring depth perception, driving, operating dangerous equipment, climbing, or working around unprotected heights. (Id.). While his report provides some support for the ALJ's functional capacity finding, the hypothetical question did not include restrictions on driving, operation of dangerous equipment, or work around heights (Tr. 302), and was, therefore, insufficient to support the hypothetical factors even if it were entitled to be given controlling weight.

The decision will be remanded for further consideration.

This the ___30___ day of November, 2005.

G. WIX UNTHANK
SENIOR JUDGE

12